EXHIBIT 1

# IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) CHAPTER 13 |
| | ) CASE NO. 25-51310 |
| TIMOTHY W. WEAKLEY | ) |
| | ) JUDGE ALAN KOSCHIK |
| Debtor. | ) |
| | ) **AFFIDAVIT OF MONICA CHEPEUS** |

The undersigned, Monica Chepeus, being first duly sworn according to law, deposes and says as follows:

1. I am over 18 years of age and have personal knowledge of and am competent to testify to the matters contained in this Affidavit.

2. I am the Recovery and Resolution Manager for National Auto Group, Inc. dba Byrider-Akron ("Byrider").

3. Byrider is the current owner of a 2012 Chevrolet Camaro with VIN number 2G1FB1E36C9167916 (the "Vehicle"), per the true and correct copy of the Certificate of Title attached hereto as Exhibit "A".

4. Title to the Vehicle was not transferred to Timothy W. Weakley ("Weakley") because he failed to pay the full downpayment of $3,750.00 per the terms of the true and correct copies of the July 12, 2025 Ohio Retail Installment Contract and Security Agreement and Ohio Retailer Buyer's Order, true and correct copies of which are attached hereto as Exhibit "B".

5. I and Byrider had no knowledge of Weakley filing for or intending to file for bankruptcy at the time of repossession of the Vehicle.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Monica Chepeus

SWORN TO and subscribed before me this 16 day of September, 2025.

_____
Notary Public

BRANDI L. LAMANNA
Notary Public, State of Ohio
My Commission Expires:
June 13, 2029

4912-0430-2185, v. 1

2

EXHIBIT A

# OHIO CERTIFICATE OF TITLE

**ISSUING COUNTY** CLERMONT
**ISSUING TITLE OFFICE #** 1303
**RESIDENT COUNTY** STARK

## STATE OF OHIO
### ORIGINAL

**TITLE No.** 13 0388 8454
**ISSUE DATE** 01/25/2024

C-1777

**IDENTIFICATION NUMBER**
2G1FB1E36C9167916

**YEAR** 2012
**MAKE** CHEV
**MAKE DESCRIPTION** CHEVROLET

**CONVERSION**

**MILEAGE** 129,458
**BODY TYPE** 2D
**MODEL DESCRIPTION** CAMARO

**EVIDENCE**
MT-AA7069471

**MILEAGE NOTATION** ACTUAL

**COMMENTS**

**PURCHASE PRICE** $0.00

**EXEMPT** RN

**NOTATION(S)**

**OWNER(S)**
NATIONAL AUTO GROUP INC

3000 W TUSCARAWAS ST
CANTON, OH 44708

**DEALER PERMIT**
UD018442

**PREVIOUS OWNER(S)**
CARVANA LLC

40 W 14TH ST STE 4B
HELENA, MT 59601

WITNESS MY HAND AND OFFICIAL SEAL THIS 25TH DAY OF JANUARY, 2024

%225614727



%225614727

BARBARA A WIEDENBEIN
CLERK OF COURTS    T    TLM TLM

ERASURES AND ALTERATIONS VOID THIS TITLE

TITLE DOCUMENT CONTAINS OHIO WATERMARK WHICH IS VISIBLE WHEN HELD TO LIGHT

## OHIO RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT

EXHIBIT B

| | |
|---|---|
| Seller: National Auto Group Inc. d/b/a Byrider- Akron<br>Address: 777 Canton Rd<br>Akron, OH 44312 | Contract Date: 7/12/2025<br>No.: C4777 |
| Buyer: TIMOTHY WAYNE WEAKLEY<br>Address: 5214 WITNER STREET, BARBERTON, OH 44203 | Co-Buyer:<br>Address: N/A |

Description of Used Vehicle Purchased:
Year: 2012
Make: CHEVROLET
Model: CAMARO
VIN: 2G1FB1E36C9167916
Odometer Mileage: 131320 . Is this mileage accurate? ☒ Yes ☐ No

Description of Trade-In: N/A

### FEDERAL TRUTH IN LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of<br>$ 3,750.00 |
|---|---|---|---|---|
| 22.899 % | $ 9,814.82 | $ 16,486.78 | $ 29,051.60 | $ 30,051.60 |

Your Payment Schedule will be:

| Number of Payments: | Amount of Payments: | When Payments Are Due: |
|---|---|---|
| 10 | 275.00 | Irregular equal deferred down payments due on 07/18/2025, 07/25/2025, 08/01/2025, 08/08/2025, 08/15/2025, 08/22/2025, 08/29/2025, 09/05/2025, 09/12/2025, 09/19/2025 |
| 104 | 252.90 | Bi-Weekly beginning 10/3/2025 |

Security: You are giving us a security interest in the Vehicle purchased.
Late Charge: If any part of any payment is more than 10 days late, you will be charged a late charge equal to $ _____ N/A _____.
Prepayment: If you pay all or any part of the Contract early, you will not have to pay a penalty.
See the Terms and Conditions section of this Contract for additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

| Itemization of Amount Financed | | |
|---|---|---|
| Cash Price of Vehicle (Including sales tax of $ 1,261.10) | $ | 17,249.10 |
| Cash Down Payment | $ | 1,000.00 |
| Deferred Down Payment | $ | 2,750.00 |
| i. Total Cash/Deferred Down Payment | $ | 3,750.00 |
| ii. Trade-In Allowance | $ | N/A |
| iii. Less: Amount Owing | $ | N/A |
| Payoff To: N/A | | |
| iv. Net Trade-In (ii. minus iii.) | $ | N/A |
| v. Net Cash/Trade-In (i. + iv.) | $ | 3,750.00 |
| vi. Amount to Finance line v. (if v. is negative) | $ | 0.00 |
| Down Payment (v. – disclose as $0 if negative) | $ | 3,750.00 |
| Unpaid Balance of Cash Price | $ | 13,499.10 |
| To Public Officials – Filing Fees | $ | 33.50 |
| To Public Officials – Taxes | $ | 0.00 |
| *Other Charges: | | |
| To Seller for Vehicle Service Contract | $ | 2,695.00 |
| To Seller for Documentary Service Charge | $ | 250.00 |
| To Seller for OLRS | $ | 9.18 |
| To N/A for N/A | $ | N/A |
| To N/A for N/A | $ | N/A |
| To N/A for N/A | $ | N/A |
| To N/A for N/A | $ | N/A |
| To N/A for N/A | $ | N/A |
| Total Other Charges/Amounts Paid to Others on Your Behalf | $ | 2,987.68 |
| *Seller may keep a portion of any these amounts. | | |
| Unpaid Balance of Cash Price plus Total Other Charges/Amounts Paid to Others | $ | 16,486.78 |
| Amount Financed (Principal Balance) | $ | 16,486.78 |
| Finance Charge | $ | 9,814.82 |
| Total of Payments (Time Balance) | $ | 29,051.60 |





`14309210`

| Additional Protections: The types of voluntary protection plans listed below are optional. Purchasing a voluntary protection plan is not required to obtain credit, and is not a factor in the credit decision, terms of credit, or terms of sale of the Vehicle. You will not receive these voluntary protections unless you sign and agree to pay the additional cost. Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s), which are issued by the providers of those products and explain the terms and conditions of each product. If no coverage or charge is given for an item, you have declined any such coverage we offered. |

☒ Vehicle Service Contract  ☐ GAP Waiver or GAP Coverage  ☐ GPS Subscription

Term 36 months / 36000 miles    Term N/A              Term N/A
Price $ 2,695.00                Price $ N/A           Price $ N/A
Coverage Engine, Transmission, Front Wheel   Coverage N/A       Coverage N/A
Drive, Rear Wheel Drive as stated in Vehicle  N/A                N/A
Service Contract                N/A                   N/A

If you default, you agree that we can claim benefits under any of these voluntary protection plans to the extent allowable under applicable law, and terminate them to obtain refunds of unearned charges to reduce what you owe or repair the Vehicle. If the Vehicle is a total loss because it is damaged or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

Buyer's Signature _____  Date 7/12/25   Co-Buyer's Signature _____  Date

## TERMS AND CONDITIONS

**AGREEMENT:** In this Retail Installment Contract and Security Agreement ("Contract"), the words "you" and "your" refer to each Buyer named above. The word "Buyer" may mean one or more persons named above who are purchasing the Vehicle from the Seller and financing the purchase by this Contract. The words "we," "us," and "our" refer to the Seller (the creditor) named above, or any other party to which this Contract is assigned. This Contract provides for the financing over time of your purchase of the Vehicle described above. The word "Vehicle" means all motor vehicles and/or services purchased by the Buyer from the Seller, including the usual accessories and attachments. The "Total Sale Price" shown above is the total amount you will pay for your purchase on a credit basis. The amount you would pay if you purchased the Vehicle for cash is shown above as the "Cash Price." By signing this Contract you agree to purchase the Vehicle on credit and you agree to pay the Total Sale Price according to the terms provided in this Contract.

You agree that your name and address as shown on page 1 are your exact legal name and current principal address. You also agree that your telephone number and place of employment reflected on your credit application are current and accurate. You must provide us with prompt notice of any change in your name, address, telephone number, or place of employment.

**PROMISE TO PAY:** You promise to pay to Seller at its address shown above the Cash Down Payment and the Amount Financed, plus Finance Charges on the unpaid portion of the Amount Financed at the Contract Rate of ___22.900 %___ shown above on the unpaid portion of the Amount Financed, according to the Payment Schedule shown above and the terms of this Contract, until all sums due under this Contract are paid in full. Finance Charges will begin to accrue under this Contract on the Contract Date. Finance charges accrue on an actual/365 day basis. You also agree to pay this Contract according to the payment schedule and late charge provisions shown in the Federal Truth-in-Lending Disclosure; or a greater amount. You agree that any payment made that exceeds the amount shown in the Amount of Payments box will be applied first to accrued, unpaid finance charges, and then to reduce the principal amount you owe, unless you and we agree otherwise in writing. As part of the cash down payment for your Contract, you promise to pay us the full amount of the deferred down payments as reflected in your Payment Schedule and your Itemization of Amount Financed. If this Contract is signed by multiple Buyers, each of you is individually and jointly responsible for all the agreements in this Contract. You are still required to pay this Contract even if we release our security interest from any Vehicle securing this Contract.

F4500-OH                   Sat Jul 12 15:58:57 EDT 2025                                     Page 3 of 10
© 2024 Byrider Franchising Partners, LLC
Rev. 11/22/2024



**SIMPLE FINANCE CHARGE CONTRACT:** Finance Charges on this Contract are calculated using the 'simple interest' methodology. We do not intend to charge or collect any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. The Finance Charge, Total of Payments, and the Amount of Payments as shown in the Payment Schedule under the Federal Truth in Lending Disclosure Statement, above, may differ from the amount you will ultimately have to pay if your payments are not received on their exact due dates. For example, making your payment before its scheduled due date will reduce the amount of Finance Charges owed for that month and increase the portion of your payment applied to the Amount Financed. This will result in your final payment being smaller, while late payments will increase the amount of Finance Charges owed during the month and increase your final payment. Your final payment may also be different from the amount shown in the Payment Schedule if the Seller figured the payment schedule assuming equal monthly payment periods and other factors as are permitted under the Federal Truth in Lending Act. Your promise to pay requires you to pay the final payment on the date due even if it is different from the amount shown above. You understand that we (or our affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that you buy through us or our affiliate.

**SECURITY INTEREST:** To secure your obligations, you give us a "first priority" security interest in the Vehicle, all accessions, attachments, accessories and equipment placed in or on the Vehicle and all proceeds of the Vehicle. You also agree to give us a security interest in all moneys or goods received for the Vehicle, service and other contracts we finance. You also give us a security interest in all proceeds of service or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts. The security interest secures payment of all amounts you owe in this Contract and performance of your other agreements in this Contract. The payment secured to us by the Vehicle and its proceeds includes, without limitation, your payment to us of the cash down payment, any deferred down payment, and any scheduled payment reflected in the Contract. You agree a "first priority" security interest is a security interest before any other party's lien, claim, interest or right in or to the Vehicle. You will make sure the title shows our security interest (lien) in the Vehicle. You will not grant anyone else a security interest, lien or any other claim to the Vehicle without our express prior written consent. We reserve our right to setoff proceeds from insurance, service, or other contracts and excess amounts of estimated official fees and taxes that we may receive against the amount you owe under the Contract, as the law allows. You agree to defend our interests in the Vehicle against claims made by others, and you agree to take all necessary steps to keep our claim to the Vehicle ahead of anyone else.

**MILITARY ANNUAL PERCENTAGE RATE STATEMENT:** Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account).

If you are a member of the active military, or a spouse or dependent of a member of the active military, and to the extent that your Contract is subject to the provisions of the Military Lending Act, 10 U.S.C. § 987 and its implementing regulations, 32 C.F.R. § 232.1, et seq., nothing contained in this Contract is intended to waive your rights or protections under that law.

**LATE CHARGE:** You agree to pay the late charge as shown in the Federal Truth In Lending Disclosure Statement.

**RETURNED PAYMENT CHARGE:** If you make any payment required by this Contract with a check, negotiable instrument, electronic payment, or other payment device that is returned or dishonored, you agree to pay the maximum returned payment fee permitted by applicable law. If not paid when due, we may add this fee to the unpaid balance of the Contract.

**EXPEDITED PAYMENT FEE:** You are allowed, but not required, to use an expedited payment method for making Contract payments. If you do, we will not charge a separate fee to you for using any expedited payment method, but a third party service provider may require you to pay the provider a fee for these expedited payment services. If this happens, we will not receive or keep any part of the fees the service provider may charge you for these expedited payment services. You understand and agree that we accept payments using methods that will not require you to pay a separate fee.

**PREPAYMENT OF AMOUNT OWED:** You may prepay all amounts due under this Contract without penalty at any time. If you prepay, payments will be applied first to accrued, unpaid finance charges, and then to reduce the principal amount you owe. If you make a partial prepayment, there will be no changes in the due dates of your monthly payments. Any partial prepayment will not excuse any later scheduled payments until you pay in full.

**USE OF VEHICLE:** You agree to pay us all you owe under this Contract even if the Vehicle is damaged, destroyed, or missing. You agree to take any and all actions necessary to promptly title and register the Vehicle, including but not limited to execution of necessary documentation and payment of any amounts owed by you to a state or local agency required for you to title or register the Vehicle. You agree not to remove the Vehicle from the United States or sell, rent, lease, or transfer any interest in the Vehicle without our prior written consent. You agree to keep it free from the claims of others and not to expose the Vehicle to abandonment, misuse, seizure, confiscation, or involuntary transfer. You agree to keep the Vehicle at your address as shown on page 1 of this Contract. You agree to provide us with written notice at least 30 days prior to relocating to a different state than the one shown on page 1 of this Contract. You agree not to add to the Vehicle any accessories, equipment or any other property in which any person has an ownership or security interest. If we pay any repair bills, storage bills, taxes, fines, or charges on the Vehicle, you agree to repay the amount when we ask for it. If you do not pay these amounts, they will be added to the outstanding balance of the Contract. You otherwise agree to pay all taxes and assessments on the Vehicle as they become due. You agree not to use the Vehicle as a residence or dwelling. You also agree not to use the Vehicle for any commercial use or agricultural use not related to personal, family, or household purposes. You must notify us within 24 hours of any loss or damage to the Vehicle, and you also agree to provide us with reasonable access to inspect the Vehicle.

**VEHICLE INSURANCE:** You agree to have insurance for the term of this Contract against loss or damage to the Vehicle, and at all times it must cover our interest in the Vehicle. You may obtain physical damage insurance on the Vehicle from a person of your choice that is authorized to sell such insurance and is acceptable to us. The collision and comprehensive coverage deductibles may not exceed $ 500.00 . If the Vehicle is lost or damaged, you agree that, in our sole discretion, we may use any insurance settlement to reduce what you owe us or to repair the Vehicle. You also agree that if the insurance proceeds do not cover the amounts you still owe us, you must pay the difference to us. If you do not maintain the required physical damage insurance, we may buy physical damage insurance if we choose to do so. If we decide to buy any such insurance, we may either buy insurance that covers your interest and our interest in the Vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the additional insurance charge you must pay. The charge will be the premium for the insurance and a finance charge at the highest rate the law permits. If you provide proof of the required insurance to us evidencing coverage was in effect in compliance with this Contract, then we will cancel any insurance purchased by us, and we will refund to you any insurance premium charges and fees paid by you for any period of overlapping coverage.

**DEFAULT:** You will be in default if any of the following occurs, unless prohibited by law: (i) You fail to make any payment under this Contract when due, including any cash down payment, deferred down payment, and scheduled payment you owe us under the Contract; (ii) You fail to do anything else you have agreed to do in this Contract; (iii) Any statement or representation you made in your credit application is untrue or incorrect; (iv) You fail to provide us: (a) with proof of employment, income, residence, insurance or repair to credit history; (b) personal references; or (c) other information relating to the credit transaction within 3 business days after our written request for this information; (v) You fail to title and register the Vehicle within 90 days of the Contract Date; (vi) We are unable to obtain and perfect a first priority security interest in the Vehicle; (vii) You die, become incompetent, generally fail to pay your debts as they become due, or become the subject of a voluntary or involuntary bankruptcy proceeding; (viii) Any judgment, levy, attachment, writ of garnishment or other similar order is entered against you or the Vehicle; (ix) Any police or governmental agency seizes or impounds the Vehicle or starts forfeiture proceedings against the Vehicle; or (x) Either our security interest in the Vehicle or our ability to enforce our security interest in the Vehicle is impaired.

If a default happens with respect to any Buyer, we reserve the right to exercise our rights against any or all of the persons listed as a Buyer.

**RIGHTS AFTER DEFAULT:** If you are in default, we may declare all unpaid sums immediately due and payable (accelerate) and exercise any other available remedies allowed by law. If your only default is that you did not make a payment when due, we may accelerate this Contract only if the payment default continues for at least 30 days. The amount you will owe will be the unpaid part of the Amount Financed, the earned and unpaid part of the Finance Charge, any late charges, and all other amounts due because you defaulted. These amounts will earn finance charges from the date you are required to pay us at the Contract Rate described in the Promise to Pay section of this Contract. Additionally, we may immobilize, disable, or take possession of (repossess) the Vehicle if we do so peacefully and the law allows it. If we take the Vehicle, any accessories, equipment, and replacement parts will stay with the Vehicle. If any personal items are in the Vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

F4500-OH
© 2024 Byrider Franchising Partners, LLC
Rev. 11/22/2024

Sat Jul 12 15:58:57 EDT 2025



Page 5 of 10

If we repossess the Vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the Vehicle. You may also have the opportunity to cure the default and reinstate the Contract after repossession. If you do not redeem before sale, we will sell the Vehicle in a commercially reasonable manner. We will send you a written notice of sale before selling the Vehicle. We will apply the money from the sale, less allowed expenses related to the repossession, repair, storage and sale of the Vehicle, to the amount you owe. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us, unless prohibited by applicable law. Except when prohibited by law, you are responsible for any deficiency if the proceeds do not satisfy the amounts you owe under this Contract. We may sue you for these additional amounts. If you do not pay this amount when we ask, we may charge you interest at the highest lawful rate until you pay.

We may delay or refrain from enforcing any of our rights under this Contract without losing them. For example, we may extend the time for making some payments without extending the time for making others. By deciding not to exercise a right with respect to an event of default, we do not give up our right to consider an event a default if it happens again in the future. You also expressly waive demand for payment, notice of non-payment, presentment, notice of dishonor, protest, notice of protest, notice of intent to accelerate, and notice of acceleration.

**WARRANTIES:** A limited warranty is included with your vehicle purchase. See your separate limited warranty agreement for additional details. State law may also provide you with certain warranty rights.

**JURY TRIAL WAIVER:** Notwithstanding the enforceability or applicability of any other provision of this Contract, you and we agree that you and we will give up and waive your and our respective rights to a trial by a jury, if any.

**GOVERNING LAW:** The terms of this Contract shall be governed by the law of the State of the Seller, as shown on page 1, except as provided in the Arbitration Provision below. If any provision of this Contract is not enforceable, the other terms will remain a part of this Contract. You hereby authorize us to correct any clerical errors or omissions made in completing this Contract and other documents related to this transaction.

**COMMUNICATION CONSENT:** You agree that we may monitor and record telephone calls regarding your account to assure the quality of our service or for other reasons. You agree that we may call you, using an automatic telephone dialing system or otherwise, leave you a voice, prerecorded, or artificial voice message, or send you a text, e-mail, or other electronic message for any purpose related to the servicing and collection of your accounts with us (each a "Communication"). You agree that we may send a Communication to any telephone numbers, including cellular telephone numbers, or e-mail addresses you provide to us at any time. You acknowledge and confirm that you have the authority to provide the consent because you are either the subscriber of the telephone number(s) or you are the non-subscriber customary user who has authority to provide the consent. You also agree that we may include your personal information in a Communication. You agree that we will not charge you for a Communication, but your service provider may. In addition, you understand and agree that we may always communicate with you in any manner permissible by law.

**ASSIGNMENT OF CONTRACT:** You agree that we may, at our option, assign your payment obligations under this Contract to anyone we choose. We cannot assign our obligations to perform services financed under this Contract. You agree that the assignee will have all of our rights and remedies under this Contract and that you will pay to the assignee all that is still owed under this Contract, at the times and in the amounts provided in the Contract.

**ARBITRATION AGREEMENT**

**This Arbitration Agreement does not apply if the Buyer is covered by the Military Lending Act.**

> A. Mandatory Arbitration: In this Arbitration Agreement, the words "you" and "your" refer to each Buyer named above on page 1 of the Retail Installment Contract and Security Agreement (the "Contract"). The word "Buyer" may mean one or more persons named above who are purchasing the Vehicle from the Seller and financing the purchase by the Retail Installment Contract and Security Agreement. The words "we," "us," and "our" refer to the Seller (the creditor) named above on page 1 of the Retail Installment Contract and Security Agreement. The word "Seller" also includes any other party to which the Retail Installment Contract and Security Agreement is assigned. Unless otherwise stated in this Arbitration Agreement, any Dispute between Buyer and Seller (collectively, the "Parties") shall, at the election of Buyer or Seller, be resolved by a neutral, binding arbitration, and not by a court of law. This procedure includes any Dispute over the interpretation, scope, or validity of this Contract, the Arbitration Agreement or the arbitrability of any issue, with the sole exception to the validity of the Parties' waiver of any right to bring a class action or to participate in a class action as provided for under paragraph F, or the Parties' waiver of any right to bring a non-class representative action or to participate in a non-class representative action as provided for under paragraph G, shall be solely determined by the appropriate court, if necessary. The Arbitration Agreement applies to the Parties, including their respective employees or agents, as to all matters which arise out of or relate to this Contract or are in any way connected with the purchase and sale or financing of the Vehicle, or any resulting transaction or relationship.

B. **Dispute:** The term "Dispute" shall have the broadest meaning possible and means any action, dispute, claim, or controversy of any kind arising out of, in connection with or in any way related to the Contract, the sale of the Vehicle, financing, contracts, origination, servicing, service agreements, collection, reporting, or any other aspect whatsoever of the past, present, or future relationship or conduct of the Parties. The term "Dispute," includes without limitation: claims under federal or state consumer protection laws; claims in tort or contract; claims under statutes or common law; claims at law or in equity; other past, present or future claims, counterclaims, crossclaims, third party claims, interpleaders or otherwise; and any claim relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including, but not limited to, any claim that all or any part of this Arbitration Agreement, except paragraph F or paragraph G, is void, voidable or unconscionable.

C. **Facts about Arbitration:** Arbitration is a process in which a neutral arbitrator decides a dispute instead of a judge or jury. Each side has an opportunity to present some evidence to the arbitrator. A Party's ability to discover things may be limited. Arbitration proceedings are private and less formal than court trials. Other rights that the Parties might have in court might not be available in arbitration. An arbitrator issues an award. A court may then enforce the award like a court judgment. Courts rarely overturn an arbitrator's award.

D. **Rules and Procedures:** Written notice shall be given for any Dispute. Such notice shall be given by both first class mail and certified mail, return receipt requested. Notice to the Buyer shall be sent to the Buyer's address in the Contract. Notice to the Seller shall be sent to the address in paragraph N of this Arbitration Agreement. The Party initiating the arbitration shall set forth in the notice the nature and factual basis of the Dispute, the names and addresses of all other Parties, the amount involved, and the specific relief requested. The Party responding to such a notice may answer and similarly set forth any counter-Disputes. The arbitration shall be governed by and conducted under: (a) the Federal Arbitration Act, 9 U.S.C. § 1; through 16 as amended (the "FAA"); (b) the consumer arbitration rules (the "Rules"), and, where and if appropriate, the Consumer Mass Arbitration Rules (the "Mass Arbitration Rules") of the American Arbitration Association ("AAA"); and (c) this Arbitration Agreement. A copy of the Rules and Mass Arbitration Rules can be found online at: www.adr.org/rules. If the terms of this Arbitration Agreement and the Rules or Mass Arbitration Rules conflict, the terms of this Arbitration Agreement shall control to the extent of the conflict. The parties agree that the arbitration proceedings and all related documents and discovery shall be kept confidential unless disclosure is required by law.

E. **Standards and Law:** The Parties agree that the Contract and purchase of the Vehicle involve interstate commerce and that this Arbitration Agreement is governed by the FAA. The arbitrator shall strictly apply applicable substantive law and applicable statutes of limitation consistent with the FAA and shall honor claims of privilege recognized at law.

F. **Class Action Waiver:** The Parties agree to give up any right they may have to bring a class action lawsuit or class arbitration, or to participate in either as a claimant. The Parties agree to give up any right to consolidate or join any arbitration proceeding with the arbitration of others. To the extent the Parties are permitted to file small claims under paragraph K, the Parties agree that any small claim may only be brought on an individual basis and that no small claim may be brought on a class or representative basis. The Parties agree that the waiver of rights in this paragraph F is necessary to ensure any Dispute is arbitrated in an informal and expedited fashion and the exercise of such rights would be contrary to the Parties' intention to resolve Disputes informally and expeditiously.

G. **Representative Action Waiver:** The Parties give up the right to bring a non-class representative lawsuit or non-class representative arbitration (such as serving as a private attorney general or seeking a public injunction), or to participate in either as a claimant, in any jurisdiction in which such procedure might be permitted. However, if it is determined that you have a non-waivable right to seek a public injunction, to act as a private attorney general, or to assert a claim in a representative capacity, you may pursue such relief in court. If such relief is sought, all other Disputes must be adjudicated in arbitration first, and any claim for such relief in court must be stayed until the arbitration of other Disputes is completed. The Parties agree that the waiver of rights in this paragraph G is necessary to ensure any Dispute is arbitrated in an informal and expedited fashion and the exercise of such rights would be contrary to the Parties' intention to resolve Disputes informally and expeditiously.

H. **Administration of Certain Claims:** If twenty-five (25) or more similar demands for arbitration are filed against us and representation of all parties is consistent or coordinated across the cases, then the Parties agree that AAA's Mass Arbitration Supplementary Rules shall apply. The Mass Arbitration Supplementary Rules can be found at www.adr.org/rules. Moreover, Buyer agrees that the administration of such certain claims must be resolved in staged proceedings. Buyer agrees to this process even though it may delay the arbitration of his or her claim. If such a process is initiated in accordance with this paragraph, then the filing of a notice of dispute shall toll the applicable statute of limitations for that particular buyer until the completion of the process described in this paragraph H. The administration of such certain claims shall proceed as follows:

> (a) **First Stage:** In the first stage, the Parties will each select 25 cases (50 cases total) to be filed in arbitration and resolved individually by different arbitrators. If feasible, the arbitrators will be from the respective claimants' home states. If there are fewer than 50 cases, all will be filed in arbitration. In the meantime, no other cases may be filed or proceed in arbitration, and the AAA must not assess or demand payment of fees

for the remaining cases or administer or accept them. The arbitrators are encouraged to resolve the cases within 120 days of appointment or as swiftly as possible thereafter, consistent with fairness to the Parties.

(b) **Second Stage:** After the first stage is completed, the Parties must engage in a single mediation of all remaining cases, and Seller will pay the mediation fee. If the Parties cannot agree how to resolve the remaining cases after mediation, they will repeat the process of selecting and filing 50 cases to be resolved individually by different arbitrators, followed by mediation.

(c) **Third Stage:** If any claims remain after the second stage, the process will be repeated until all claims are resolved, with four differences. First, a total of 100 cases may be filed in the third and later stages. Second, the cases will be randomly selected. Third, arbitrators who decided cases in the first two stages may be appointed in later stages if different arbitrators are not available. Fourth, mediation is optional at the election of counsel for the claimants.

(d) Between stages, the Parties will meet and confer regarding ways to improve the efficiency of the staged proceedings, including whether to increase the number of cases filed in each stage. Either Party may also negotiate with AAA regarding the amount or timing of AAA fees. A process arbitrator, as outlined in AAA's Mass Arbitration Rules, will have the authority to enforce this paragraph H, including by enjoining the mass filing, the prosecution or administration of arbitrations, or the assessment or collection of AAA fees. This paragraph H and each of its requirements are intended to be severable from the rest of this Arbitration Agreement. If, after exhaustion of all appeals, a court decides that the staging process in this subsection is not enforceable, then the cases may be filed in arbitration and the payment of AAA filing, administration, case-management, hearing, and arbitrator fees will be assessed as the arbitrations advance and arbitrators are appointed rather than when the arbitrations are initiated.

**I. Fees and Costs:** We will consider any good faith request by Buyer for us to pay the administrator's or arbitrator's filing, administrative, hearing and/or other fees if the Buyer cannot obtain a waiver of such fees from the administrator and we will not seek or accept reimbursement of any such fees. The Parties shall be responsible for paying their own attorneys' fees in connection with any arbitration, unless otherwise allowed for under applicable substantive law and awarded by the arbitrator. If, however, the arbitrator finds that either the substance of the Buyer's claim or the relief sought is frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)), then the allocation and payment of all such fees will be governed by AAA Rules.

**J. Self-Help:** Notwithstanding this Arbitration Agreement, the Parties retain the right to exercise self-help remedies and to seek provisional remedies from a court, pending final determination of the Dispute by the arbitrator. No Party waives the right to elect arbitration of a Dispute by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court. In addition, either Buyer or Seller or Seller's successors and assigns may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes or counterclaims or third-party claims brought later in the lawsuit.

**K. Exceptions:** The Parties agree that this Arbitration Agreement is not applicable to "small claims" meaning those claims that either Party is entitled to file and maintain in an appropriate small claims court or any action where the total amount in controversy is no greater than $15,000, including any claims for attorney's fees and non-monetary relief.

**L. Severability:** If it is determined that any paragraph or provision in this Arbitration Agreement is illegal, invalid, or otherwise unenforceable, such illegality, invalidity or unenforceability shall not affect the other paragraphs and provisions of this Arbitration Agreement. The remainder of this Arbitration Agreement shall continue in full force and effect as if the severed paragraph or provision had not been included. Notwithstanding this severability provision: (1) if you bring or participate in a class action and a court of competent jurisdiction determines the Class Action Waiver in paragraph F to be illegal, invalid, or otherwise unenforceable, the Parties agree that paragraph F shall not be severed and that this Arbitration Agreement shall be void in its entirety; (2) if you bring or participate in a non-class representative action and a court of competent jurisdiction determines the Representative Action Waiver in paragraph G to be illegal, invalid, or otherwise unenforceable, the Parties agree that paragraph G shall not be severed and that this Arbitration Agreement shall be void in its entirety. For the avoidance of doubt, if you bring an individual non-representative action and a court of competent jurisdiction determines the Class Action Waiver in paragraph F or the Representative Action Waiver in paragraph G to be illegal, invalid, or otherwise unenforceable, such illegality, invalidity or unenforceability shall not affect the other paragraphs and provisions of this Arbitration Agreement, and the remainder of this Arbitration Agreement shall continue in full force and effect as if the severed paragraph or provision had not been included.



M. **Survival of Arbitration Agreement:** This Arbitration Agreement will survive and continue in full force and effect notwithstanding cancellation, termination, amendment, payment in full, discharge in bankruptcy, or other expiration or conclusion of the Contract or any other contract or transaction between the Parties, unless otherwise agreed in writing. In addition, Buyer understands and acknowledges that the rights and responsibilities afforded to Seller under this Arbitration Agreement survive any assignment of the Contract by Seller and that Seller can enforce this Arbitration Agreement in the event a Dispute arises after the assignment of the Contract.

N. **Right to Reject Arbitration:** If you do not want this Arbitration Agreement to apply, you may reject it by mailing a written notice to us c/o Byrider Franchising Partners, LLC, 12802 Hamilton Crossing Blvd., Carmel, Indiana 46032 Attn: VP Franchise Operations that describes the Contract and states that you are rejecting the Arbitration Agreement. A rejection notice is only effective if it is signed by each Buyer, and the envelope that the rejection notice is sent in is postmarked no more than 10 calendar days after the date of the Contract. If you reject this Arbitration Agreement, it will not affect any other provisions of the Contract or your obligations under the Contract. If you do not properly reject this Arbitration Agreement, it will be effective as of the date of the Contract.

**FOR ALL DISPUTES COVERED BY THIS ARBITRATION AGREEMENT, THE PARTIES HAVE AGREED TO WAIVE THEIR RIGHT TO A TRIAL BY JURY AND THEIR RIGHT TO PARTICIPATE IN CLASS AND/OR REPRESENTATIVE ACTIONS. EXCEPT FOR DISPUTES AND CLAIMS NOT SUBJECT TO THIS ARBITRATION AGREEMENT, ARBITRATION SHALL BE IN PLACE OF ANY CIVIL LITIGATION IN ANY COURT AND IN PLACE OF ANY TRIAL BY JURY.**

**THE TERMS OF THIS ARBITRATION AGREEMENT AFFECT YOUR LEGAL RIGHTS. IF YOU DO NOT UNDERSTAND ANY TERMS OF THIS ARBITRATION AGREEMENT OR THE COST, ADVANTAGES OR DISADVANTAGES OF ARBITRATION, SEEK INDEPENDENT ADVICE BEFORE SIGNING THIS CONTRACT. BY SIGNING THIS CONTRACT, YOU ACKNOWLEDGE THAT YOU HAVE READ, UNDERSTAND AND AGREE TO BE BOUND BY EACH OF THE PROVISIONS, COVENANTS AND STIPULATIONS SET FORTH ABOVE.**

| ASSIGNMENT: This Contract is assigned to Motor Car Credit Co. Inc. d/b/a CNAC the Assignee, phone 330-733-8838. This assignment is made under the terms of a separate agreement. Seller: By [signature] Date: [signature] |
|---|

**ENTIRE AGREEMENT:** This Contract constitutes the entire agreement and understanding between you and us with respect to the credit transaction described herein, and supersedes any and all prior agreements and understandings, oral or written, with respect to such transaction. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Paragraph headings are for convenient reference only and are not to be interpreted as a complete summary of each paragraph.

**SEVERABILITY:** Except as otherwise provided in the Arbitration Provision above, Buyer agrees that if any term of this Contract is found under the law to be invalid or unenforceable, then such term shall be of no force and effect and shall be severed and the remainder of this Contract shall continue in full force and effect.

**ELECTRONIC SIGNATURE:** If you consented to sign this Contract electronically, you agree that you are signing this Contract in electronic form just as if you had physically signed and delivered a paper document and provided it to us. You are signing this Contract with the present intention of adopting and accepting the method of authentication we selected to show your acceptance of and agreement to the terms of the Contract, just as if you affixed your physical signature to this Contract. You agree that any true and complete physical reproduction of the electronically signed Contract, such as a printed copy, shall be treated the same as or as the legal equivalent of a duplicate of the original electronic agreement.

14309210

> **NOTICES: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**
>
> Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
>
> Spanish Translation:
> La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.
>
> Liability insurance coverage for bodily injury or property damage caused to others is not included in this Contract.

> **NOTICE : (1) DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN. (2) YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS AGREEMENT.**

By signing below, you agree to the terms contained in this Contract and acknowledge that you received a completed copy of the Contract and any attachments to it on the Contract Date listed above.

| TIMOTHY WAYNE WEAKLEY | Buyer Signature | 7.12.25 |
|---|---|---|
| **Buyer** | Buyer Signature | Date |
| | | |
| **Co-Buyer** | Co-Buyer Signature | Date |
| National Auto Group Inc. d/b/a Byrider- Akron | Authorized Signature | 7.12.25 |
| **Seller** | Authorized Signature | Date |

**NOTICE** This Contract and Security Agreement are subject to a security interest in favor of The Huntington National Bank, 106 South Main Street Akron, Ohio 44308 (330 384 7831). No sale or assignment of this Contract and Security Agreement is effective without the express written consent of The Huntington National



## CUSTOMER STATEMENT

**X** INDIVIDUAL CREDIT: applying for credit in your own name and relying on your own income or assets and not the income or assets of another person as a basis for repayments of the credit-request

____ JOINT CREDIT: applying for joint credit with another person.

| | | | | | |
|---|---|---|---|---|---|
| First Name **TIMOTHY** | Middle **WAYNE** | Last **WEAKLEY** | Soc Sec # ███ | Birthdate **08/25/1972** | NickName |
| | Marital Status **Married** | Drivers Lic # **VL923378** | DL State **OH** | DL Exp date **08/25/2026** | # Dependents **0** |
| Home Address **5214 WHITNER STREET** | | City **BARBERTON** | State **OH** ZIP **44203** | *Home Phone **3308092649** | Phone at Residence? |
| Resident type **Homeowner** | Landlord Name **SHIRELEY** | Address | City | State | *Phone **(330) 808-5325** |
| Mo pmt **$850.00** | Dwelling Type **House** | Utils incl? **No** Will Call Phone | Date Rent Due **08/01/2025** | How Long **3yrs 0mos** *Cell Phone **(330) 808-2649** | Is rent current? **Yes** *E-Mail **TIMOTHYWEAKLEY @YAHOO.COM** |
| Dependent Ages | | | | | |

| Previous Addresses | City | State Zip Code | Landlord Name | Phone | How long |
|---|---|---|---|---|---|
| **4831 THURSBY ROAD** | **NORTH CANTON** | **OH 44720** | **RENTING** | **(999) 999-9999** | **1yrs 6mos** **0yrs 0mos** |

| | | | | |
|---|---|---|---|---|
| Employed By **OHIO FARMS LLC** | | Address **2416 EAST WEST SALEM ROAD** City **CRESTON** | State **OH** | Phone **(330) 435-6400** |
| Supervisor **HR** | | Hours Worked **1** Hourly Rate **$1.00** | Position **OVER THE ROAD TRUCK DRIVER** | Shift **1ST** |
| Employed Since **08/01/2022** | | Income **$1,070.00** How often paid **Weekly** | Next pay date **07/04/2025** | |
| Active Member of the Armed Forces? **No** | | | | |

| Previous Employer | City | St Phone | EndDt | How Long | Supervisor |
|---|---|---|---|---|---|
| **OWNER OPERATOR** | **CANTON** | **OH (999) 999-9999** | **07/20/2022** | **2yrs 0mos** **0yrs 0mos** **0yrs 0mos** **0yrs 0mos** **0yrs 0mos** | **HR** |

| | | | | | |
|---|---|---|---|---|---|
| *Other Income #1 | by | Amount | Paid | Phone | Start Date |
| *Other Income #2 | by | Amount | Paid | Phone | Start Date |

*Alimony, child support or separate maintenance income need not be revealed if you do not wish it considered as a basis of repayment.

### CREDIT REFERENCES

| Checking Acct **CONSUMERS NATIONAL** | | Acct # **1234** | | Savings Acct **CONSUMERS NATIONAL** | Acct # **1234** |
|---|---|---|---|---|---|
| Name of Creditor | City | State | Current Bal | Payment amt | Payment Int |

| | | | | | | |
|---|---|---|---|---|---|---|
| Pay child support? | **No** | How much?..... | How often?... | | | |
| Bankruptcies? | **No** | Reason.......... | | Chapter... | Description... | Date... |
| Repossessions? | **No** | Description...... | Judgments or pending legal actions? | **No** | Description... | |
| Co-signed on any loans? | **No** | Description...... | Credit obtained in other name? | **No** | What name?... | |
| Last car purchased from | | | | | | |

FOR DEALERSHIP USE Printed: Jul 2 2025 9:28AM, Customer First Logged on Jul 2 2025 9:11AM
Salesperson Name **lcoffma1**    Dealership Name **National Auto Group Inc.**
Cash Down **$1,000.00**    Trade ACV    Trade Description

Customer Initials ___W___    Page 1

For Ohio Applicants: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

For Wisconsin Residents: No provision of a marital property agreement, a unilateral statement under Wis. Stat. Sect. 766.59, or a court decree under Wis. Stat. Sect. 766.70 will adversely affect the interests of a creditor, unless the creditor (a) receives a copy of the agreement, statement, or decree before granting credit, or (b) has actual knowledge of the adverse provision when the credit obligation is incurred.

For New York Residents: In connection with your application for credit, a consumer report may be obtained which contains information on your credit worthiness, credit standing, credit capacity and general reputation. If you request, you will be informed whether a consumer report was obtained and if so, you will be given the name and address of the consumer reporting agency which furnished the report. If your application is granted, subsequent consumer reports may be obtained in connection with any update, extension of renewal of credit.

For California Residents: A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency. I have the right as described in Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

You may report information about my account to credit bureaus. Late payments, missed payments or other defaults on my account may be reflected in my credit report.

I request credit from dealer in the amount and under the terms for which I qualify. I certify that I am not currently in any bankruptcy proceedings or other legal proceedings that would adversely affect my ability to repay the credit requested, and that the information I have provided in this application is complete and accurate. Dealer may submit my application to Motor Car Credit Co. Inc. 777 Canton Rd Akron, OH 44312 for consideration and to other potential creditors. Dealer and Motor Car Credit Co. Inc., when evaluating my application and when reviewing or collecting any credit extended, may investigate my credit, income and employment history, obtain information about me from persons identified with my application (references, employers, creditors, and landlords), obtain information about me available through public records, and obtain consumer reports about me from credit reporting agencies to the extent permitted by applicable law. If I finance my purchase with you and I provide you with information about other persons who may be interested in financing a purchase from the dealer, I agree that you may talk to such persons about my decision to purchase and finance a vehicle from the dealer. If I have been referred to you by another person who has purchased a vehicle from the dealer, I agree that you may tell that person about my decision to apply for and/or obtain credit for purchasing a vehicle.

By providing the number of your land line, cell phone or other wireless device and your email address, you expressly consent and agree that we and any of our affiliates, agents, service providers or assignees may call you, using an automatic telephone dialing system or otherwise, leave you a voice, prerecorded, or artificial voice message, or send you a text, e-mail, or other electronic message for any purpose related to the servicing or collection of any account that you may establish with us or for other informational purposes related to your account (each a "Communication"). You agree that we and any of our affiliates, agents, service providers or assignees may call or text you at any telephone number associated with your accounts, including cellular telephone numbers, and may send an e-mail to any email address associated with your accounts that you provide to us now or in the future. You also agree that we and any of our affiliates, agents, service providers or assignees may include your personal information in a Communication. We will not charge you for a Communication, but your service provider may. In addition, you understand and agree we and any of our affiliates, agents, service providers or assignees may always communicate with you in any manner permissible by law that does not require your prior consent. You agree that we may monitor and record any telephone calls to assure the quality of our service or for other reasons. You acknowledge and confirm that you have the authority to provide this consent because you are either the subscriber of the telephone number(s) or you are the non-subscriber customary user who has authority to provide this consent. If you change your telephone number(s), you agree to contact us immediately to advise us of any such change.

_____  7/2/2025
CUSTOMER SIGNATURE                        DATE

I authorize Byrider and CNAC to deliver sales and service calls and text messages to the following telephone number(s) 3308082649; (330) 808-2649 using an automatic telephone dialing system and/or a prerecorded or artificial voice message. I understand I am not required to provide this authorization as a condition of obtaining credit or of purchasing any vehicle.

_____  7/2/2025
CUSTOMER SIGNATURE                        DATE



14309210

# OHIO RETAIL BUYER'S ORDER

Byrider- Akron
777 Canton Rd          Akron, OH 44312

| Stock No. | C4777 |
| D.O.B. | 6/28/1972 |
| S.S.Number | |

Buyer's Name: TIMOTHY WAYNE WEAKLEY                Date: 7/12/2025
Street Address: 5214 WITNER STREET                 Phone: 330-808-2649
City: BARBERTON  County: SUMMMIT  State: OH  ZIP: 44203   Salesperson  Jacob Coffman

### Sale Vehicle
| Year 2012 | Make CHEVROLET | Model CAMARO | Body Type 2 Door | Color Gray |
| VIN 2G1FB1E36C9167916 | | Trim N/A | To be delivered on or about 7/12/2025 | |

The odometer of the above described vehicle now reads 131320 and is accurate unless checked below.
___ The odometer mileage is not accurate. Refer to the federal mileage statement for full disclosure.
___ If checked, this vehicle was previously a rental vehicle.

### Trade-In Vehicle
| Year | Make | Model | Body Type | Color |
| VIN | | Trim | Mileage | |

**Remarks:**

**Deposit Receipt:** Dealer hereby acknowledges receipt of the sum of $ N/A as a Deposit/Partial Payment for the vehicle described above. In exchange for the deposit, Dealer will not sell the vehicle for ____ days. This Deposit/Partial Payment is not refundable.

**Negative Equity:**
I am aware the balance owed on my trade-in vehicle exceeds the trade-in allowance from Dealer and, as a result, I have requested that $ 0.00 of negative equity from my trade-in be included in the cash price of the vehicle.
x _____

**Trade-In and Other Credits:**

| | | |
|---|---|---|
| Trade-In Allowance | $ | 0.00 |
| Balance Owed on Trade | $ | 0.00 |
| Balance Owed to: | | |
| Net Equity | $ | 0.00 |
| Deposit | $ | N/A |
| Cash on Delivery | $ | 1,000.00 |
| Other: Deferred Down | $ | 2,750.00 |
| Total Credit | $ | 3,750.00 |

| | |
|---|---|
| Cash Price of Vehicle | $ 15,988.00 |
| Optional Service Contract | $ 2,695.00 |
| | 0.00 |
| Total Sale Price | $ 18,683.00 |
| Sales Tax | $ 1,261.10 |
| Title Filing Fees | $ 24.18 |
| Registration Fees | $ 18.50 |
| Documentary Service Charge | $ 250.00 |
| Total | $ 20,236.78 |
| Total Credit | $ 3,750.00 |
| BALANCE DUE | $ 16,486.78 |

UNLESS DEALER FURNISHES BUYER WITH A SEPARATE WRITTEN WARRANTY MADE BY DEALER ON ITS OWN BEHALF, DEALER HEREBY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ON ALL GOODS AND SERVICES SOLD BY DEALER. IN THE EVENT THAT A SERVICE CONTRACT IS SOLD BY DEALER ON ITS OWN BEHALF, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE IS LIMITED IN DURATION TO THE TERM OF THE SERVICE CONTRACT.

The two pages of this Order and any documents or agreements integrated herein comprise the entire agreement affecting this purchase and no other agreement or understanding of any nature concerning same has been made or entered into, or will be recognized. I/We have read the matter printed on the second page hereof and agree to it as a part of this order the same as if it were printed above my/our signature. I/We certify that I/we am/are at least 18 years old, and hereby acknowledge receipt of a copy of this order.

CONTRACTUAL DISCLOSURE STATEMENT THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

Approved: Angela Weir                          Signed: _____  7.12.25
           Dealer or Authorized Representative        Accepted by TIMOTHY WAYNE WEAKLEY   Date

                                                Signed: _____
                                                        Accepted by           Date

This order is not valid unless signed and accepted by Dealer or its authorized representative.

F2200 OH 7-2023
Sat Jul 12 15:58:55 EDT 2025



14309210

## Preliminary Purchase Worksheet

Buyer: TIMOTHY WAYNE WEAKLEY
Co-Buyer:
Date: 7/12/2025
Salesperson: Jacob Coffman

| VEHICLE INFORMATION: | | DOWN PAYMENT: | |
|---|---|---|---|
| STOCK C4777 | COLOR Gray | TOTAL DOWN PAYMENT | $3,750.00 |
| MAKE CHEVROLET | MODEL CAMARO | PAID TODAY | $ 1,000.00 |
| YEAR 2012 | MILES 131320 | DEFERRED | $2,750.00 |
| VIN 2G1FB1E36C9167916 | | | |

**Deferred Down Payments**

Deferred Payment(s) Due 275.00 on 7/18/2025, 275.00 on 7/25/2025, 275.00 on 8/1/2025, 275.00 on 8/8/2025, 275.00 on 8/15/2025, 275.00 on 8/22/2025, 275.00 on 8/29/2025, 275.00 on 9/5/2025, 275.00 on 9/12/2025, 275.00 on 9/19/2025

### PURCHASE INVESTMENT:

| PURCHASE PRICE | $15,988.00 |
|---|---|
| TRADE ALLOWANCE | $0.00 |
| TRADE DIFFERENCE | 15,988.00 |
| SERVICE CONTRACT (optional) | $2,695.00 |

*36 months/36,000 miles Optional Service Contract*

| TRADE INFORMATION: | | PAYMENT INFORMATION: | |
|---|---|---|---|
| YEAR | MAKE | Payment Amount: | 252.90 |
| MODEL | MILES | First Payment Date: | 10/3/2025 |
| VIN | | Convenient Auto Pay Requested?: | YES   NO |
| Amt. Owed 0.00 | to N/A | Terms: 104 Bi-Weekly Payments beginning 10/3/2025 | |

I/We acknowledge that the vehicle prices were posted in a public place and I/we had the opportunity to view them prior to providing my/our credit information.

Buyer Initials _TW_   Co-Buyer Initials _____

I/We acknowledge that this Preliminary Purchase Worksheet is not a binding contract and reflects my/our preliminary discussions. The terms and conditions of my/our purchase of the Vehicle will be contained in a Buyer's Order and/or Retail Installment Contract you provide and I/we sign.

Buyer Initials _TW_   Co-Buyer Initials _____

F1650 AA03sep15r1   Sat Jul 12 15 58 54 EDT 2025